Christian, J.
This case is before us by appeal from a decree of the circuit court of Augusta county.
It has been very elaborately and ably argued by the counsel on both sides.
Upon a careful review of the record before us, we find that the single question we have to determine is, what is the proper construction to be given to the deed of trust executed by John Miller and wife to John B. Baldwin, trustee, and what are Mrs. Miller’s rights in this litigation, as secured by said deed ?
The facts to be gathered from the record, material to be noticed, are as follows:
John Miller was the owner of a valuable iron furnace, and also of certain real estate, consisting of ore banks, timber land and farming lands, lying in the counties of Rockingham, Albemarle and Augusta.
In the year 1857 he was extensively engaged in the manufacture of iron at his furnace and forge in the county of Augusta. He had become, in the prosecution of this enterprise, largely indebted. Numerous judgments had been recovered against him, and executions to a large amount were in the hands of the sheriff, about to be, if not actually *279 levied on his personal estate. Owing to the pressure these debts, it was impossible to continue his business of manufacturing iron, which was very extensive, and considered a very valuable enterprise, unless his personal estate could be released from the lien and levy of executions then in force against him, amounting to the sum of about ten thousand dollars.
Under these circumstances, being desirous to continue his business, which he hoped to be profitable, and at the same time to secure all his creditors, he executed a deed of trust for that purpose, by which he conveyed to John B. Baldwin, trustee, all his' estate, real and personal, which was then considered very valuable; his real estate conveyed in said deed consisting of “ore banks, timber land and farming lands, lying in the counties of Buckingham, Augusta and Albemarle, embracing the iron furnace and forge and mills operated by said Miller,” and his personal estate, also conveyed in said deed, consisting “of slaves, stock, machinery, implements and materials, household and kitchen furniture, crops growing and gathered, and every article of personal property of whatever kind and description held, owned or claimed by said Miller, wheresoever situated; also all debts in any wise coming to said Miller or money to which he is in any manner entitled from whatsoever sources, and whether the same be due or not.”
In order to carry out the purposes of this trust deed, to wit: to enable Miller to continue his business in the manufacture of iron, and at the same time to secure his creditors, it was necessary, in order to prevent a total suspension of his business, that his personal property employed in, and which was necessary to its successful prosecution, should be released from the liens and levy of executions, then in the hands of the sheriff of Augusta county; for if these executions, amounting to the sum of at least ten thousand dollars, were to be enforced, then the enter- *280 Pr*se mus*} S^°P an(^ disastrously end at once. In this state of things, two of the friends of Miller, Benjamin and Joseph Smith, came forward and undertook to pay off these executions, and thereby release the personal estate of Miller from the liens and levy of these executions, uPon condition that they should be secured for the money so advanced by them, and in order that the business should be continued, and the other purposes of the trust deed be carried out. Accordingly a deed, carefully drawn by that distinguished lawyer and eminent citizen, the late John B. Baldwin, was executed on the 26th day of September, in the year 1857, by John Miller and Mary Miller his wife, which conveyed to Jno. B. Baldwin all the estate real and personal as above described, of which the said John Miller was seized and possessed, of every kind and description whatsoever, upon certain trusts plainly and specifically set forth in said deed.
Among these trusts the prime object was to secure the creditors of Miller, and to prevent a forced sale at public auction of the large and valuable property conveyed. Accordingly ample power was invested in the trustee Baldwin, to continue the business of the furnace and forge, and to use all means necessary to secure its efficient operations, until such time as a sale of the whole iron works could be beneficially effected.
It was stipulated in said deed that “if upon these operations ” (by the trustee) “ there shall be realized any clear profit, it shall constitute a part of the trust fund, and if there shall be any loss it shall be paid out of the fund.”
This deed also contained the following provision: “The real estate hereby conveyed is subject to the contingent right of Mary Miller, wife of the said John Miller, to dower therein, a right which, unless released, would seriously interfere with, if not wholly prevent the sale of the property for the purposes of this trust. The said John Miller is unwilling to ask of his wife, or to permit her to *281 grant any release of this right, except upon terms of fair compensation. And the said Mary Miller deems it but just to her and her children to demand and accept, in sideration of such release hereby made, the compensation T • • • and sscurity hereinafter provided.
The deed further declared that “the great object of conveyance, however, being the sale of the entire trust property as soon as practicable, and the application of the proceeds to the payment of the debts intended to be secured, the trustee is authorized and required to proceed, as soon as practicable, to sell publicly or privately, at his discretion, and upon such advertisement and terms of payment as he shall deem best, all such portions of the real estate as he shall find to admit of separation from the iron works establishment, and all such personal property as can be spared from the uses of said establishment.
“He shall also proceed in like manner to sell the iron works establishment, except that it shall not be forced to sale at public auctiou without the written order of a majority in value of the trust creditors of the first and second class secured or indemnified in this conveyance, omitting the said Mary Miller.
“ Out of the proceeds of the trust property, whether arising from the operations of the iron establishment or from sales of property, real or personal, the trustee shall, in the first place, pay all costs and expenses incurred in the making of this deed, or about the execution of the trust, including a commission to the trustee of five per cent, upon his receipts and disburements, and shall then pay the following claims against the said John Miller, in classes as follows, viz:
“First class. To Benjamin Crawford and Joseph Smith, or to either of them, all such sums as they, or either of them, shall have paid in discharge of executions now in force against the said John Miller, with interest till paid.
To Joseph Smith all such sums of money as the said John Miller may owe him by bond or note, believed to be about *282 three thousand two hundred dollars ($3,200). To Benjamin Crawford all such sums as the said Miller may owe him by bond or note, whether payable to the said Crawford or to the late firm of B. & J. S. Crawford, and for which the said Crawford has no other security. These claims are believed to be of principal money, $1,312.38, by note or bond to B. Crawford; $1,562.56 by note or bond to B. & J. S. Crawford.
“To Mary Miller, wife of said John Miller, to be placed in the hands of such trustee as she may select, and upon such trusts as she may appoint, in consideration of her uniting in this conveyance, such sum as John 1ST. Hendren, commissioner in chancery for the circuit court of Augusta councy, shall ascertain to be the value of her contingent right of dower at this date according to the rule adopted by that court for the ascertainment of such values. As the basis of such valuation, the trustee shall furnish to said Hendren the written appraisement of the property conveyed, made by Gen. Samuel H. Lewis, Dr. G. W. Kemper, Sr., and Stephen Harnesberger, Esq., and the report of the said Hendren thereon shall be conclusive. If said Mary Miller shall fail to select the trustee, the said Baldwin shall hold the fund as trustee for her sole and separate use so long as she may live, and at her death divide the same among her children as if she had died sole and intestate.”
It will thus appear that the grantor, by his deed, placed as debts of the first class, to be first secured by the property conveyed, whatever sums were due to his friends Crawford and Smith, who came forward and paid off the executions, which were liens upon his personal estate, and also the value of his wife’s contingent right of dower to be ascertained and conclusively fixed by Commissioner Hendren, whatever that amount might be. These obligations were considered of equal sanctity, and were placed upon the same footing, and to be enforced and made good by the same security.
*283 The.nature of Mrs. Miller’s contingent right of dower, as ascertained by Commissioner Hendren, upon the appraisement of the property made by the gentlemen in the deed, was the sum of $16,300.
It was this sum, therefore, which was recognized in the deed as compensation to Mrs. Miller for the relinquishment of her right of dower in the real estate of her husband, and this sum was secured to her in the deed as a debt of the first class against the trust fund, and with the debts due Crawford and Smith were first to be paid out of the assets coming to the hands of the trustee.
It further appears from the record that in furtherance of the objects and purposes of the deed, the trustee made sale of all the property, real and personal, conveyed by the deed. At this sale the first class creditors' secured, Crawford, Smith and Mrs. Miller, became large purchasers.
The sales of the personal estate was made in January, 1859, and of the real estate in December of the same year; and an account of said sales reported by the trustee to the county court of Rockingham. At the sales of property, real and personal, made by the trustee, Mrs. Miller, Smith and Crawford became, as before observed, very large purchasers; it being manifestly their purpose to save the claim secured to them as first class creditors under the deed, it being ascertained at that time that the entire proceeds of the property would not, after paying losses and expenses, fully discharge their claims.
Before any final settlement of the transactions of the trustee could be made, and before payments by these purchasers could be adjusted, and deeds made by the trustee, the late civil war commenced ; the trustee went into the military service, and all proceedings under the trust deed were for the time suspended.
After the close of the war, the trustee, John B. Baldwin, filed his bill in the circuit court of Augusta, in which he set forth very fully his transactions as trustee, the sales *284 ^ie ProPei’ty> an¿ the purchases of the same by the first class creditors, Smith, Crawford and Mrs. Miller.
The bill alleged that upon a settlement made by the trustee, it was ascertained that the trust fund would not . . pay in full the claims of Mrs. Miller and of Messrs. Smith and Crawford, constituting the first class debts. It became necessary, therefore, to determine how to apply the fund. The trustee construed the deed as putting all three of the first class creditors (Mrs. Mil lei’, Smith and Crawford) upon the same footing and requiring them all to abate ratably in case of insufficiency of assets to pay all.
He asks that the deed may be construed by the court in this and other respects, and that he be instructed how to make application of the trust fund, and that another trustee be appointed for Mrs. Miller and her children. To-this bill Mrs. Miller and her children, John Miller’s administrator, and Benjamin Crawford in his own right, and as executor of Joseph Smith, were all made parties.
Under this suit, thus commenced by the trustee, various proceedings were taken, and accounts settled, only a part of which are necessary to be noticed in this opinion.
During the pendency of the suit, and before any disposition of the trust fund had been made, or the rights of the parties under the deed adjudicated, one Harvey Kyle, who had been named in said deed as a second class creditor, filed his petition in the cause, in which he set forth, that before the deed was executed by Miller and wife to Baldwin, trustee, to wit, on the 20th of July, 1857, he recovered a judgment against John Miller for the sum of $3,600, with interest from said date, and $7.31 costs, in the county court of Rockingham, which judgment was at once docketed; and that Baldwin, trustee, and Crawford and Smith who were secured as first class creditors, had full notice of his judgment and lien ; and that no part of his judgment has been paid; and he prays that he may be made a party to said suit, and that a decree be rendered in *285 his behalf, for the amount of the said judgment against the person or persons who may be legally bound to account for it; claiming that his lien is binding upon the purchasers of the real estate sold by Baldwin, the trustee, and purchased by Smith and Crawford and Mrs. Miller secured in the deed as first class creditors.
On the 21st October, 1874, the circuit court entered its decree, by which it affirmed, “that the true meaning and construction of the deed of Jno. Miller and Mary his wife to John B. Baldwin, trustee, dated 26th September, 1857, is to secure to Mrs. Miller the commuted value of her contingent right of dower in the lands of her late husband, John Miller, embraced in said deed, as a debt in the first class in said deed, on an equal footing with Benjamin Crawford and Joseph Smith, the other creditors secured in the said first class; and said debt to the defendant Mary Miller is to be paid out of the trust fund pro rata 'with the debts due to said Crawford and Smith, secured in said first class. And that the property purchased by Mrs. Mary Miller, with the assent of her trustee, at the sale made by John B. Baldwin, trustee, for and on account of the trust fund, secured to her, must now contribute to pay back to the John Miller trust fund the amount received or purchased by her, in excess of what her said trust fund was entitled to from the said John Miller trust fund, in the order indicated in Commissioner Kenney’s report.”
In the same decree it was declared that the debt reported in the name of Harvey Kyle (being the docketed judgment set up in his petition as recovered and docketed before the execution of the deed by Miller to Baldwin) is proved to the satisfaction of the court, and the same is ordered to rank as one of the preferred debts.
By this decree the cause was recommitted to Comm’r Kenney for further report; and upon the coming in of his report fixing the sums respectively, which the creditors secured in said deed as first class creditors, must contribute *286 to the preferred creditors, to equalize the trust fund, by , , . . ratable abatement of the amount which had been received Mrs. Miller, Crawford and Smith, as first class creditors, secured by the deed, it was decreed “that the said parties must contribute to the fund to be raised in this cause for «autora J°hn Miller, who are secured in advance (i. e. who had prior liens), of the first class in said Miller’s trust deed, and yet remain unpaid, as follows”: and then follow the specific amounts which Mrs. Miller, Crawford and Smith must each contribute.
The court is of opinion that there is no error in this decree.
Under the provisions of the deed above quoted it-is plain that Mrs. Miller made an absolute sale and conversion of her contingent right of dower- in the real estate of her husband. She, by that deed, accepted the sum to be ascertained by Commissioner Hendren, upon report to him of the value of the real estate of her husband by parties selected by herself and named in the deed.
She then became a creditor of her husband’s trustee for that amount, and her debt, by way of compensation for her contingent right of dower, was secured as a first class debt, with those of Crawford and Smith. She accepted the same security, and was placed on the same footing with them. She had no prior claim as against the Kyle judgment or any other. Her contingent right of dower was absolutely sold and converted into the sum ascertained by commissioner Hendren, and for that sum she was a creditor, secured with other first class creditors, with all the benefits of such a position, and subject with them to any abatement growing out of an insufficiency of the trust fund.
If it had been the intention of the parties by the terms of the trust deed to give to Mrs. Miller a prior and superior claim against all creditors, it must be conceded, that so able a lawyer and careful a draftsman as John Baldwin *287 would have so expressed it in the deed. If a so plain and carefully drawn instrument could need any such interpretation, we have it, made by him, the counsel of all parties, and draftsman of the deed, in his bill in which he says he construed the trust deed as putting all three, (Crawford, Smith and Mrs. Miller the first class creditors), upon the same footing, and that all should be required to abate ratably (from what they received) in case of insufficiency of assets to pay all.
In the arrangment made by her husband Mrs. Miller has deliberately accepted the compensation provided for her, and the security for its payment. She cannot now claim any right of dower against Kyle. She has no right of dower. She has parted with it for an adequate and liberal compensation, and accepted her security with the first class creditors under the deed. She has no rights superior to theirs. She must stand or fall with them. She, having with them, reaped the advantages of the trust deed, must share with them its responsibilities, and with them refund whatever she has received in excess of her just and fair proportion of the trust fund.
We are therefore of opinion, that there is no error in the decree of the circuit court, and that the same must be affirmed.
Moncure, P., and Burks, J., concurred in the opinion of Christian, J.
Staples, J., acquiesced with reluctance in the decree.
Anderson, J., .dissented.
Decree affirmed.